Richard L. Holcomb
Holcomb Law, LLLC
733 Bishop St
Suite 1478
Honolulu, HI 96813
(808) 545-4040
Hawaii Bar No. 9177
rholcomblaw@gmail.com

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BLAKE DAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COUNTY OF HAWAI'I, | ) | Civil Action _____ |
| | ) | |
| Defendant. | ) | Memorandum in Support of Motion for |
| | ) | Preliminary Injunction |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

# TABLE OF CONTENTS

I.      Introduction ........................................................................................1

II.     Statement of facts ...............................................................................2

III.    Argument..............................................................................................4

A.      Standard for a Preliminary Injunction ...............................................4

B.      The County is Liable Pursuant to Monell .........................................5

C.      Plaintiff Has a Strong Likelihood of Success on the Merits ...........6

D.      Plaintiffs' Conduct is Covered by the Second Amendment's Plain Text ........6

E.      The Regulations Confers the Chief Impermissible Discretion .....................12

F.      There is No Historical Tradition Justifying the Challenged Provisions ........18

IV.     Plaintiffs will suffer irreparable harm ............................................21

V.      Granting the TRO/PI is in the Public Interest and Serves Equity...................22

VI.     Waiver of Bond is Proper and Appropriate Under These Circumstances .......23

VII.    This Court Should Consolidate Pursuant to Rule 65(a)(2) .............................24

VIII.  Conclusion.......................................................................................................25

# TABLE OF AUTHORITIES

*Allen v. District of Columbia*, Civil Action No. 20-cv-2453 (TSC), 2023
U.S. Dist. LEXIS 60950 (D.D.C. Mar. 31, 2023)..................……………...............19

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011).......................5

*Baird v. Bonta*, 81 F.4th 1036 (9th Cir. 2023)......................................................4,9,21,23

*Cantwell v. Connecticut*, 60 S. Ct. 900 (1940)................................................................14

*Davis v. Yenchko*, 2023 Ill. Cir. LEXIS..........................................................................19

*District of Columbia v. Heller,* 554 U.S. 570 (2008).....................................7,9,11,14,17

*Donald J. Trump for President, Inc. v. Bullock*, No. CV 20-66-H-DLC,
2020 U.S. Dist. LEXIS 169794 (D. Mont. Sep. 16, 20)................................................24

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014)..................................22

*East Bay Sanctuary Covenant v. Trump*, 349 F.Supp.3d 838
(N.D. Cal. 2018) ………………...........................................................................23-24

*Elliott v. Kiesewetter*, 98 F.3d 47 (3d Cir. 1996).....................................................23-24

*Elrod v. Burns*, 427 U.S. 347 (1976) …………..………………………………...…21

*Epona, LLC v. Cty. of Ventura*, 876 F.3d 1214 (9th Cir. 2017) ………………….....15

*Espinoza v. Montana Department of Revenue*, 140 S. Ct. 2246 (2020) …………...…10

*Ezell v. City of Chi.,* 651 F.3d 684 (7th Cir. 2011) ……………………..…………......21

*Fisher v. Kealoha,* 2012 U.S. Dist. LEXIS 90734, 2012 WL………………………...22

*Fisher v. Kealoha*, 855 F.3d 1067 (9th Cir. 2017) ……………………..…………......14

*Gadomski v. Tavares*, 113 A.3d 387 (R.I. 2015) ……………………..…………….....15

*Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009) ………………….…………….23

*Kaahumanu v. Hawaii*, 682 F.3d 789 (9th Cir. 2012) ……………………..…………15

*Kennedy v. Louisiana*, 554 U.S. 407 (2008) ……………………..………………….…..11

*Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009) ……………………......22

*Koons v. Platkin,* No. 22-7464, 2023 WL 3478604 (D.N.J. May 16, 2023)……….….11

*Lakewood v. Plain Dealer Pub. Co*., 486 U.S. 750 (1988)………..…………………..…15

*McDonald v. City of Chi.*, 561 U.S. 742 (2010)………..……………….………….17-21

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012).......................................................21

*Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 98 S. Ct. 2018 (1978)...........................5-6

*Monterey Mech. Co. v. Wilson*, 125 F.3d 702 (9th Cir. 1997)………..…………….....21

*Mosby v. Devine*, 851 A.2d 1031 (R.I. 2004) ……………………..………………13-15

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) …………...1-2,5-14,17

*People of the State of Cal. ex rel. Van De Kamp v. Tahoe Regency Planning Agency*, 766 F.2d 1319 (9th Cir. 1985) ………………..………..................24

*People v. Zerillo*, 219 Mich. 635 (1922) …………………..…………………....14-16

*Preminger v. Principi*, 422 F.3d 815 (9th Cir. 2005) ………………..…………….....22

*Range v. AG United States*, 69 F.4th 96 (3d Cir. 2023) ………………..…..………18

*Riley's Am. Heritage Farms v. Elsasser,* 32 F.4th 707 (9th Cir. 2022) ………….…...4-5

*Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) ………………..………….....22,23

*Schware v. Bd. of Bar Exam. of State of N.M.,* 353 U.S. 232 (1957) …………….…...16

*Simmons v. United States*, 390 U.S. 377 (1968) ………………..………………….…17

*Srour v. New York City*, 2023 U.S. Dist. LEXIS 190340 (S.D.N.Y. Oct. 24, 2023) .…13

*United States v. Connelly*, No. EP-22-CR-229(2)-KC, 2023 U.S. Dist. LEXIS 62495 (W.D. Tex. Apr. 6, 2023) ………………..………….………....21

*United States v. Daniels*, No. 22-60596, 2023 U.S. App. LEXIS 20870 (5th Cir. Aug. 9, 2023) ………………..………………………….…....18

*United States v. Freeman*, No. 23 CR 158, 2023 U.S. Dist.
LEXIS 199719 (N.D. Ill. Nov. 7, 2023) …………….………………………….......20

*United States v. Hicks*, No. W:21-CR-00060-ADA, 2023 U.S. Dist.
LEXIS 35485 (W.D. Tex. Jan. 9, 2023) ……………….…………………………….20

*United States v. Jackson*, No. 22-2870, 2023 U.S. App.
LEXIS 22991 (8th Cir. Aug. 30, 2023) ……………….…………………..…..18

*United States v. Quiroz*, No. PE:22-CR-00104-DC, 2022 U.S. Dist.
LEXIS 168329 (W.D. Tex. Sep. 19, 2022) ……………….……………….......20

*United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023) ……………….………......07

*United States v. Stambaugh*, No. CR-22-00218-PRW-2, 2022 U.S. Dist.
LEXIS 206016 (W.D. Okla. Nov. 14, 2022) ……………….……………………..20

*United States v. Verdugo-Urquidez*, 494 U.S. 259, 110 S. Ct. 1056,
108 L. Ed. 2d 222 (1990) ……………….…………………..……………….…...7

*Utz v. Cullinane,* 520 F.2d 467 (D.C. Cir. 1975) ……………….………………......16

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013) ………………….......23

*Weaver v. City of Montebello*, 370 F.Supp.3d 1130 (C.D. Cal. 2109) ……………...23

*Williams v. Garland*, Civil Action No. 17-cv-2641, 2023 U.S. Dist.
LEXIS 203304 (E.D. Pa. Nov. 14, 2023) ……………….………………….......20

vii

*Worth v. Harrington*, 2023 WL 2745673 (D. Minn. Mar. 31, 2023) …………..………..10

### *Statutes and other authorities*

18 U.S.C. § 922(g)(1) …………………………………………..….. ....................20

18 U.S.C. § 922(g)(1) …………………………………………….... ...................20

18 U.S.C. § 922(n) …………………………………………………..............19-20

42 U.S.C § 1983 ……………………………………………………......................5

Haw. Rev. Stat. § 91 ……………………………………………….... ....................5

Rule 65(a)(2) of the Federal Rules of Civil Procedure ……………….....................24

Rule 65(c) of the Federal Rules of Civil Procedure …………….................................23

U.S. CONST. AMEND. III ...................…………………………….......................8

U.S. CONST. AMEND. IV...................…………………………….......................8

### *Treatises*

11A Charles Alan Wright et al., Federal Practice and Procedure
§ 2948.1 (2d ed. 1995) ………......................................................................21

## I.  Introduction

Up until recently, the County of Hawaii had never issued a concealed carry permit.[1] The Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), compelled the County of Hawaii to issue permits to carry concealed handguns. This it has done reluctantly.  It has put in place a series of policies which unconstitutionally restrict the rights of county residents.  At issue here is the Hawai'i Police Department License to Carry (concealed and unconcealed) Application Processing Procedure Manual ("Manual") which precludes an individual from obtaining a license when the Chief of Police uses his discretion to determine they lack good moral character and/or appear unsuitable.[2]  In Plaintiff Day's case, he is being denied his Second Amendment rights solely because he used non-lethal self-defense.

---

[1] "As counsel for the County openly admitted at oral argument, *not a single concealed carry license* has ever been granted by the County. Nor have concealed carry applicants in other counties fared much better: Hawaii counties appear to have issued only *four* concealed carry licenses in the past *eighteen years. See* 2000 Haw. Att'y Gen. Reps., *Firearm Registrations in Hawaii, 2000 et seq." Young v. Hawaii*, 896 F.3d 1044, 1071 n.21 (9th Cir. 2018)

[2] See Section 6.4.4. of the regulations for open carry permits and section 7.2.4. for concealed carry permits.  Both sections give the Chief discretion to deny permits when the "applicant has been involved in other recent violent conduct". Available at https://www.hawaiipolice.com/wp-content/uploads/2022/08/1.-PM-12.3-License-to-Carry-Concealed-and-Unconcealed-Application-Proce.._.pdf  (last  visited 11/30/2023)

1

Pursuant to *Bruen*, this policy is unconstitutional because there is no historical practice of prohibiting individuals from Second Amendment rights simply because they have been detained by the police and/or been in an altercation.  By this standard, persons who have been involved in self-defense situations or otherwise have been victims of violent situations can be deprived of their Second Amendment rights despite not having committed a crime. There is no historical tradition of prohibiting people from Second Amendment rights in this manner.  This standard is also unconstitutional because it violates Footnote 9 of the *Bruen* opinion by requiring Hawaii County Police ("HPD" to engage in the "appraisal of facts, the exercise of judgment, and the formation of an opinion."[3] I.e. it confers the police impermissible discretion to deny a permit. For the reasons laid out below, this Court should issue a preliminary injunction which orders the County to issue Mr. Day a permit and enjoin the relevant portions of the Manual.

## II.   Statement of facts

Plaintiff Blake Day works in the foreclosure and mortgage servicing industry. Complaint at ¶ 5. His job is to go to foreclosed properties and maintain them. *Id* at ¶ 6. As a function of his profession, he occasionally deals with people who are upset.

---

[3] *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2138 n.9 (2022) (quoting *Cantwell v. Connecticut*, 310 U. S. 296, 305, 60 S. Ct. 900, 84 L. Ed. 1213 (1940))

On January 30, 2023, he went to a house located at 11-3808 First Street, Volcano, HI 96785 he was told was vacant pursuant to a work order. *Id* at ¶ ¶ 8. Prior to entering the property, Mr. Day verified with a neighbor that no one was living at the residence. *Id* at ¶ 9. After this verification, Mr. Day entered the property and began an initial securing of the property for the mortgage company pursuant to the work order. *Id* at ¶ 10. While Mr. Day was at the home, the owner of the house, who was not living there at the time, was alerted to his presence at the home by a security system. *Id* at ¶ 11. The homeowner called the police and then drove to the home. *Id* at ¶ 12. He parked his car behind Mr. Day and blocked Mr. Day's exit in a manner where Mr. Day could not leave. *Id* at ¶ 13. The homeowner then approached Mr. Day in a threatening manner with bottle in his hand. *Id* at ¶ 14. Mr. Day pulled out a pepper ball gun to defend himself and the owner threw a bottle at Mr. Day which struck him in the face. *Id* at ¶ ¶ 15, 16. Afterwards, the two began talking and the situation deescalated. *Id* at ¶¶ 17, 18, 19 The police then arrived and began an investigation. *Id* at ¶ 20. Both Mr. Day and the homeowner were detained. *Id* at ¶ 20. After the police completed their investigation both parties were released. *Id* at ¶ 22. No charges were ever filed by the police department and Mr. Day was never booked or arrested. *Id*. Mr. Day has no other criminal history other than minor traffic violations. *Id* at ¶ 24.   In the first week of May, Mr. Day applied for a license to

carry a concealed handgun.[4] *Id* at ¶ 59. On May 31ˢᵗ, 2023, HPD denied his application due to the incident above. *Id at ¶ 60.* His denial letter states that he cannot reapply for a concealed carry permit until one year after the denial date. *Id at ¶* 60.

## III.  <u>Argument</u>

### A.   **Standard for a Preliminary Injunction**

"The appropriate legal standard to analyze a preliminary injunction motion requires a district court to determine whether a movant has established that (1) he is likely to succeed on the merits of his claim, (2) he is likely to suffer irreparable harm absent the preliminary injunction, (3) the balance of equities tips in his favor, and (4) a preliminary injunction is in the public interest." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). "It is well-established that the first factor is especially important when a plaintiff alleges a constitutional violation and injury. If a plaintiff in such a case shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation." *Id.* "It is "always in the public interest to prevent the violation of a party's constitutional rights."" *Id* (quoting *Riley's Am. Heritage Farms v. Elsasser,* 32 F.4th 707, 731 (9th Cir. 2022)). "An "individual's right to carry a handgun for self-defense outside the

---

[4] While the denial letter cites to the open carry portion of the Manual, Mr. Day applied for a concealed carry permit. *See* Complaint at ¶ 59.

home" under the Second Amendment is one such constitutional right." *Id* (quoting *N.Y. State Rifle & Pistol Ass'n v. Bruen,* 142 S. Ct. 2111, 2122 (2022)). Alternatively, an "injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (internal citation omitted).

## B.   The County is Liable Pursuant to Monell

The County of Hawaii is liable for violating Mr. Day's Second Amendment rights. "Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 690, 98 S. Ct. 2018, 2035-36 (1978) (footnotes omitted). Haw. Rev. Stat. § 91 gives state and county agencies broad authority to engage in policy making. The County of Hawaii has used that authority to create an independent policy in the form of the Manual.  Mr. Day was denied a carry permit pursuant to the authority given to the Hawaii County Chief of Police by the Manual. *See* Complaint at ¶ 63. Thus, he was denied via an official policy of the County of Hawaii. Pursuant to *Monell*, the County is directly liable for any violation of Mr. Day's Second Amendment rights.

5

## C.   Plaintiff Has a Strong Likelihood of Success on the Merits

"[T]he Second Amendment guarantees a general right to public carry," meaning ordinary, law-abiding citizens may "'bear' arms in public for self-defense." *Bruen*, 142 S.Ct. at 2135. Accordingly, the "general right to public carry" cannot be restricted absent "*exceptional* circumstances." *Bruen*, 142 S. Ct. at 2156 (emphasis added). To determine whether a state's restriction is constitutional, the Court in *Bruen* explained that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. at 2129–30. It is the State's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127; *see also id.* at 2150 ("[W]e are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden."). If the State fails to meet its burden, then the State's restrictions must be enjoined.

## D.   Plaintiffs' Conduct is Covered by the Second Amendment's Plain Text

If the plaintiff's proposed course of conduct falls within the Second Amendment's plain text, then "the Constitution presumptively protects that

conduct." *Bruen*, 142 S. Ct. at 2126. The Supreme Court has defined all of the Second Amendment's key terms. "The people" means "all Americans"; "Arms" includes "all instruments that constitute bearable arms"; and, most relevant here, to bear simply means to "carry." *District of Columbia v. Heller*, 554 U.S. 570, 580–82, 584 (2008).

Here, Mr. Day is one of the people.  This cannot seriously be disputed.  He has no criminal history other than having been detained by the police. "*Heller* explained that the words "the people" in the Second Amendment have been interpreted throughout the Constitution to "unambiguously refer[] to all members of the political community, not an unspecified subset." 554 U.S. at 580. Further, "the people" "refer[] to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *Id.* (citing *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265, 110 S. Ct. 1056, 108 L. Ed. 2d 222 (1990)). For those reasons, the *Heller* Court began its analysis with the "strong presumption that the Second Amendment right is exercised individually and belongs to all Americans," *id.* at 581, and then confirmed that presumption." *United States v. Rahimi*, 61 F.4th 443, 451 (5th Cir. 2023). [5]   The County's only rationale for denying Mr. Day his Second

---

[5] Even users of illegal drugs have been found to be part of the People post-*Bruen. See United States v. Harrison*, No. CR-22-00328-PRW, 2023 U.S. Dist. LEXIS

Amendment rights is that he fact he was detained. There can be no serious argument that being detained removes Mr. Day from Second Amendment protection. Thus, he is part of the People. Furthermore, Mr. Day's proposed course of conduct is protected by the Second Amendment.  That is because he wishes to bear arms for lawful self-defense just like the plaintiffs in *Bruen.*

"Nothing in the Second Amendment's text draws a home/public distinction," *Bruen*, 142 S. Ct. at 2134. That makes the Second Amendment unlike other Amendments. *See* U.S. CONST. amend. III ("No Soldier shall, in time of peace be quartered in any house, without the consent of the Owner, nor in time of war, but in a manner to be prescribed by law."); U.S. CONST. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."). That means that any restrictions on Second Amendment rights must come from history, not from the plain text.

The Supreme Court's binding determination of the meaning of these words and phrases definitively resolves the question of whether Plaintiff's proposed

---

18397, at *8-9 (W.D. Okla. Feb. 3, 2023)("The United States argues, however, that marijuana users are lawbreakers, and lawbreakers aren't part of 'the people' whose rights are protected by the Constitution. But this is precisely the sort of carving out of a subset from 'all Americans' that the *Heller* Court rejected.") *See also United States v. Daniels*, No. 22-60596, 2023 U.S. App. LEXIS 20870, at *9 (5th Cir. Aug. 9, 2023). ("Even as a marihuana user, Daniels is a member of our political community. Therefore, he has a presumptive right to bear arms.")

conduct is presumptively protected by the Second Amendment. Plaintiff is an American who seeks to carry bearable arms for self-defense. As in *Bruen*, these undisputed facts end the textual inquiry: "the plain text of the Second Amendment protects [Plaintiff's] proposed course of conduct—carrying handguns publicly for self-defense." 142 S. Ct. at 2134. Accordingly, under *Bruen*'s unambiguous directions, "the burden falls on [the State] to show that [the challenged ban] is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2135; Hawaii "must identify a historical analogue that curtails the right to peaceably carry handguns openly for self-defense to a comparable degree, with a comparable severity, and with a comparable blanket enforcement." *Baird v. Bonta*, 81 F.4th 1036, 1047 (9th Cir. 2023).

The relevant time period for the historical analogue must be the Founding, centering on 1791. *Bruen*, 142 S.Ct. at 2135–36; *see also* Mark W. Smith, *'Not all History is Created Equal': In the Post-Bruen World, the Critical Period for Historical Analogues Is when the Second Amendment Was Ratified in 1791, and not 1868*, SSRN, Oct. 1, 2022, https://bit.ly/3CMSKjw. That is because "'[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them.'" *Bruen*, 142 S. Ct. at 2136, quoting *Heller*, 554 U.S. at 634–35. Although the Court in *Bruen* noted an academic debate surrounding whether courts should look to 1868 and Reconstruction (when the Fourteenth

Amendment was adopted), the Court found no need to address the point as the result with respect to carry was the same. *Bruen*, 142 S. Ct. at 2138 ("[T]he public understanding of the right to keep and bear arms in both 1791 and 1868 was, *for all relevant purposes*, the same with respect to public carry." (emphasis added)). But there can be no doubt that the actual analysis of the Court is focused on l791. *See Worth v. Harrington,* 2023 WL 2745673 at *11 (D. Minn. Mar. 31, 2023) (noting the "rather clear signs that the Supreme Court favors 1791 as the date for determining the historical snapshot of 'the people' whose understanding of the Second Amendment matters"). The Court noted that its past precedents had "assumed that the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791." *Bruen*, 142 S. Ct. at 2137. *Bruen*'s characterization of the Court's precedents as assuming that 1791 is the proper answer is an understatement. In *Espinoza v. Montana Department of Revenue*, 140 S. Ct. 2246 (2020), for example, the Court held that "more than *30*" provisions of state law enacted "in the second half of the 19th Century" could not "evince a tradition that should inform our understanding of the Free Exercise Clause" when those provisions lacked grounding in Founding Era practice. *Id*. at 2258–59 (emphasis added). And even if modern laws alone could demonstrate a broad tradition of a regulation, there must at least be a strong showing that such laws are common in the states, i.e., many more than six

states. *See Kennedy v. Louisiana*, 554 U.S. 407, 423–26 (2008) (only six states permitting death penalty for child rapists shows national consensus against it).

The historical analogues the State points to must be "representative." Historical "outlier" requirements of a few jurisdictions or of territorial governments are to be disregarded. *Bruen*, 142 S. Ct. at 2133, 2153, 2147 n.22 & 2156. This means regulations from only a handful of states or those that cover only a small portion of the population are not enough to demonstrate that modern regulations are consistent with the Second Amendment. *Id.* at 2155 (rejecting regulations applying to only 1% of the American population); *see also Koons* v. Platkin, No. 22-7464, 2023 WL 3478604, (D.N.J. May 16, 2023) (finding regulations covering 10% and 15% of American population insufficient). *Buren* also categorically rejected reliance on laws enacted in the Territories, including expressly "Arizona, Idaho, New Mexico, Oklahoma," holding that such laws "are most unlikely to reflect 'the origins and continuing significance of the Second Amendment' and we do not consider them 'instructive.'" *Bruen*, 142 S. Ct. at 2154 (quoting *Heller*, 554 U.S. at 614).

The historical analogues must be "relevantly similar," which is to say that they must burden ordinary, law-abiding citizens' right to carry for self-defense in a similar manner and for similar reasons. *Bruen*, 142 S. Ct. at 2132. *Bruen* held that the inquiry into whether an analogue is proper is controlled by two "metrics" of "how and why" any restriction was historically imposed during the Founding era. *Id.* at

2133. "[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are 'central' considerations when engaging in an analogical inquiry." *Id.* (emphasis in original). In attempting the "affirmatively prove" that its restrictions on public carry are consistent with the Nation's historical tradition, the County may refer to historical analogues at the Founding and claim those meet *Bruen*'s "how" and "why" standard. 142 S. Ct. at 2127, 2133.

## E.   The Regulations Confers the Chief Impermissible Discretion

*Bruen* specifically prohibits government officials from engaging in "the appraisal of facts, the exercise of judgment, and the formation of an *opinion*" prior to the issuance of a license. *Bruen*, 142 S. Ct. at 2138 n.9. I.e. *Bruen* prohibits a licensing scheme to be predicated on an official's discretion. The County's regulations fail on their own terms. They are replete with references to the Chief applying his discretion. The regulations state "In applying the Chief's discretion" he may approve a permit. *See* Manual at 7.1 and 6.2 using identical language.  The regulations also allow him to use "[o]ther factors not mentioned above but reasonable and appropriate to the decision whether to grant or deny an application for an unconcealed carry license." *See* Manual at 6.3.10. In applying 6.4.4 which governs open carry permits, "[t]he Chief may ***consider*** the following non-exhaustive list of factors":" *Manual* at 6.4 (emphasis added).  Similarly, part 7.2. which governs concealed carry permits states the "Chief

12

*may consider*" certain factors in determining whether a person is suitable to carry a handgun. *Manual* at 7.2 (emphasis added). The plain language of the Manual gives the Chief discretion to decide who is allowed to carry a firearm. This is unconstitutional pursuant to the plain language of *Bruen*.

The only case to address this issue post-*Bruen* is *Srour v. New York City*, 2023 U.S. Dist. LEXIS 190340 (S.D.N.Y. Oct. 24, 2023).  There, the Court reviewed New York City's good moral character requirement to own a long arm. *Id* at *3. There, the Court found that New York City's licensing scheme is unconstitutional "because of the magnitude of discretion afforded to City officials in denying an individual their constitutional right to keep and bear firearms, and because of Defendants' failure to show that such unabridged discretion has any grounding in our Nation's historical tradition of firearm regulation." *Id* at *64. "Each of these provisions allows for the denial of a firearm permit upon a City official's determination of the applicant's lack of "good moral character" or upon the official's finding of "other good cause"—broad and unrestrained discretionary standards which Defendants have not shown to have any historical underpinning in our country. And because that unconstitutional exercise of discretion occurs every time a licensing official applies or has applied these provisions, they each are facially unconstitutional." *Id* at *3.

Many courts have found similar levels of discretion to be unlawful. "One does not need to be an expert in American history to understand the fault inherent in a gun-

permitting system that would allow a licensing body carte blanche authority to decide who is worthy of carrying a concealed weapon." *Mosby v. Devine*, 851 A.2d 1031, 1050 (R.I. 2004)). *See also People v. Zerillo*, 219 Mich. 635, 642 (1922) (striking down a Michigan statute prohibiting aliens from possessing revolvers without their Sheriff's consent). "A right is a check on state power, a check that loses its force when it exists at the mercy of the state. Government whim is the last refuge of a precarious right." *Fisher v. Kealoha*, 855 F.3d 1067, 1072 (9th Cir. 2017) (Kozinski, J., concurring). *Bruen* already evaluated American history in specifically identifying this type of discretion as being unconstitutional. Thus, there is no need for this Court to conduct any historical review to find the challenged regulations unconstitutional. They simply are unconstitutional pursuant to *Bruen*.

Unlike the shall issue jurisdictions discussed in *Bruen*, the County's regulations prevent ""law-abiding, responsible citizens" from exercising their Second Amendment right to public carry." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2138 n.9 (2022) (quoting *District of Columbia v. Heller*, 128 S. Ct. 2783, 2821 (2008)). It does so by impermissibly conferring upon the Chief the authority to use the "appraisal of facts, the exercise of judgment, and the formation of an opinion," *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2138 n.9 (2022) (quoting *Cantwell v. Connecticut*, 60 S. Ct. 900, 904 (1940)). The Manual grants the Chief discretion to rely on any factor he deems relevant to deny a permit. *See* Manual at 7.1 and 6.3.10.

It is well settled that "an ordinance which . . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint." *Epona, LLC v. Cty. of Ventura*, 876 F.3d 1214, 1222 (9th Cir. 2017); *See also Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 772 (1988) ("[a] standardless discretion also makes it difficult to detect, and protect the public" and is thus unconstitutional.) *Kaahumanu v. Hawaii*, 682 F.3d 789, 807 (9th Cir. 2012) ("Adequate guiding standards are not provided here, given that DLNR may revoke a permit 'at anytime' 'for any reason,' and 'in the sole and absolute discretion of the Chairperson.'"). Using similar reasoning, Rhode Island's Supreme Court "will not countenance any system of permitting under the Firearms Act that would be committed to the unfettered discretion of an executive agency." *Gadomski v. Tavares*, 113 A.3d 387, 390 (R.I. 2015) (quotation omitted). The Court held that "[t]o prevent such an occurrence, we opined that 'certain procedural steps must be employed to allow a meaningful review' of licensing decisions by this Court." *Id* at 390 (quoting *Mosby v. Devine*, 851 A.2d 1031, 1051 (R.I. 2004)). "One does not need to be an expert in American history to understand the fault inherent in a gun permitting system that would allow a licensing body carte blanche authority to decide who is worthy of carrying a concealed weapon." *Mosby*, 851 A.2d at 1050. *See also People v. Zerillo*, 219 Mich.

15

635, 642 (1922) (striking down a Michigan statute prohibiting aliens from possessing revolvers without their Sheriff's consent). Here, because the challenged regulations allow for the Chief to deny a permit based entirely on his discretion, the challenged portions of the Manual are unconstitutional.

The County's procedures are very similar to the ones at issue in *Sour* and equally unconstitutional. Thus, this Court should find Plaintiff has demonstrated a likelihood of success on the merits because the procedures confer impermissible discretion to the Chief to decide is allowed to carry a handgun. However, even if this Court does not believe that the procedure confers on the Chief impressible discretion, the procedures are still unconstitutional. That is because the Manual confers the Chief authority to deny a license to carry based off any conduct, he deems violent.

As the Supreme Court has observed, "[t]he mere fact that a man has been arrested has very little, if any, probative value in showing that he has engaged in any misconduct." *Schware v. Bd. of Bar Exam. of State of N.M.,* 353 U.S. 232, 241 (1957). "Actually," as the D.C. Circuit has explained, "a collection of dismissed, abandoned or withdrawn arrest records are no more than gutter rumors when measured against any standards of constitutional fairness to an individual and, along with records resulting in an acquittal are not entitled to any legitimate law enforcement credibility whatsoever." *Utz v. Cullinane*, 520 F.2d 467, 479 (D.C. Cir. 1975). Here, Mr. Day was not even arrested. He was momentarily detained after defending himself. It is

16

constitutionally impermissible for the County to deny him his Second Amendment rights based off this incident. This is especially true because Mr. Day was defending himself.

In *Heller* the Supreme Court found self-defense to be the core of the Second Amendment right. "We must also address the District's requirement (as applied to respondent's handgun) that firearms in the home be rendered and kept inoperable at all times. This makes it impossible for citizens to use them for the core lawful purpose of self-defense and is hence unconstitutional." *District of Columbia v. Heller*, 554 U.S. at 630. "[S]elf-defense is 'the *central component* of the [Second Amendment] right itself.'" *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. at 2135 (quoting *Heller*, 554 U. S., at 599*). See also McDonald v. City of Chicago.,* 561 U.S. 742, 767 (2010). Despite this, in the County, applicants can be denied a carry license for having used a handgun in lawful self-defense. Under the County's procedures, a person being attacked must make the Hobson's Choice of defending himself and risk losing his right to carry a firearm, or to allow himself to be attacked. Just as the government cannot predicate the use of one constitutional right based on the loss of another, the County cannot remove one's right to self-defense based on past self-defense. *See Simmons v. United States*, 390 U.S. 377, 394, (1968) ("In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another."). The challenged regulations are unconstitutional without the need to look to

17

any historical analysis because they contravene the plain holdings of *Heller* and *Bruen*.

However, there is no historical tradition to justify the County's policies.

**F.   There is No Historical Tradition Justifying the Challenged Provisions**

More than just "model citizen[s]" enjoy the right to bear arms. *United States v. Daniels*, No. 22-60596, 2023 U.S. App. LEXIS 20870, at *9 (5th Cir. Aug. 9, 2023) (*quoting United States v. Rahimi*, 61 F.4th 443, 453 (5th Cir. 2023), cert. granted, No. 22-915, 2023 U.S. LEXIS 2830, 2023 WL 4278450 (June 30, 2023)). "[E]arly American legislatures did not arbitrarily classify a group of people as dangerous and then offer no way to prove otherwise." *United States v. Jackson*, No. 22-2870, 2023 U.S. App. LEXIS 22991, at *21 (8th Cir. Aug. 30, 2023) (Strass Dissenting from Denial of Rehearing En Banc). "Early laws were about lessening the danger posed by armed rebellion or insurrection." *Id* at *6.  "Founding-era laws often prescribed the forfeiture of the weapon used to commit a firearms-related offense without affecting the perpetrator's right to keep and bear arms generally." *Range v. AG United States*, 69 F.4th 96, 105 (3d Cir. 2023). "The Government has not cited a single statute or case that precludes a convict who has served his sentence from purchasing the same type of object that he used to commit a crime. Nor has the Government cited forfeiture cases in which the convict was prevented from regaining his possessions, including firearms (except where forfeiture preceded execution)." *Id.* There simply is no historical tradition of the government disarming

people due to nonlethal force which was considered insufficient to warrant arrest, much less conviction. And even restrictions on those that have been arrested are being overturned.

Here, many courts post-Bruen have found that a mere arrest is insufficient to remove Second Amendment rights.  In *Davis v. Yenchko*, 2023 Ill. Cir. LEXIS 4 an Illinois state court found Illinois law which prohibited firearms ownership to certain people "to be unconstitutional as applied to persons charged with a felony but not yet convicted of a felony." *Id at* \*13. "In this case, Plaintiffs were disarmed solely based on an *accusation*. There was no hearing, such as a bond hearing, to determine whether these Plaintiffs were dangerous and, thus, should be disarmed pending trial." *Id* at \* 7. Similarly, in *Allen v. District of Columbia*, Civil Action No. 20-cv-2453 (TSC), 2023 U.S. Dist. LEXIS 60950, at \*27 (D.D.C. Mar. 31, 2023) the court reviewed a challenge to the District of Colombia's policy of denying carry permits based on certain arrests that did not lead to a conviction. In denying the motion to dismiss the Court found "the fact that Allen may have been suspected of criminal conduct in the past (but not charged) does not permit Defendants to restrict his Second Amendment rights." *Id* at \*27. "Under federal law[18 U.S.C. § 922(n)], a person merely *charged* with a felony cannot acquire firearms or ammunition but remain free to continue to possess firearms already in their possession." *Davis v. Yenchko*, 2023 Ill. Cir. LEXIS 4, \*7. This same reasoning has been used in a series of cases which have found 18 U.S.C. § 922(n)

unconstitutional. *See United States v. Quiroz*, No. PE:22-CR-00104-DC, 2022 U.S. Dist. LEXIS 168329 (W.D. Tex. Sep. 19, 2022); *United States v. Stambaugh*, No. CR-22-00218-PRW-2, 2022 U.S. Dist. LEXIS 206016 (W.D. Okla. Nov. 14, 2022); *United States v. Hicks*, No. W:21-CR-00060-ADA, 2023 U.S. Dist. LEXIS 35485 (W.D. Tex. Jan. 9, 2023).[6] Certainly, if an arrest or an indictment is not sufficient to deprive one of Second Amendment rights then neither can the use of nonlethal force that did not warrant arrest.

Even certain felony convictions have been found insufficient to justify removing a person's Second Amendment rights if the underlying conviction were not for a crime which would show that a person is dangerous. *See Range v. Att'y Gen.*, 69 F.4th 96 (3d Cir. 2023) (en banc) (finding 18 U.S.C. § 922(g)(1) as applied to the litigant; *See also United States v. Freeman*, No. 23 CR 158, 2023 U.S. Dist. LEXIS 199719 (N.D. Ill. Nov. 7, 2023) (same);  *See also Williams v. Garland*, Civil Action No. 17-cv-2641, 2023 U.S. Dist. LEXIS 203304 (E.D. Pa. Nov. 14, 2023) (finding 18 U.S.C. § 922(g)(1) (same).

The legal rule that can be derived from these cases is that a person cannot have his Second Amendment rights removed unless there has been a *judicial determination* that they will be a danger to themselves or others if they are allowed to carry a firearm.

---

[6] *But see United States v. Holden*, No. 22-3160, 2023 U.S. App. LEXIS 15065 (7th Cir. June 16, 2023) (upholding § 922(n) in a facial challenge but maintaining it still could be unconstitutional in an as applied challenge).

"[T]he historical tradition of disarming "unlawful" individuals appears to mainly involve disarming those convicted of serious crimes after they have been afforded criminal process." *United States v. Connelly*, No. EP-22-CR-229(2)-KC, 2023 U.S. Dist. LEXIS 62495, at *27 (W.D. Tex. Apr. 6, 2023). The County's regulations "in contrast, disarms those who engage in criminal conduct that would give rise to misdemeanor charges, without affording them the procedural protections enshrined in our criminal justice system." *Id.* Here, there has been no judicial determination that Mr. Day is a danger to himself or others.  Rather, he simply was briefly detained while the police investigated his use of nonlethal self-defense. That is insufficient to remove Second Amendment rights.  As shown above, the challenged provisions of the Manual are unconstitutional. This court should find Plaintiff Day has demonstrated a likelihood of success on the merits.

## IV.  <u>Plaintiffs will suffer irreparable harm</u>

The remaining preliminary injunction factors follow readily. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable

injury is necessary."). The Ninth Circuit has imported the First Amendment "irreparable-if-only-for-a-minute" rule to other rights and, in doing so, has held deprivation of those rights is irreparable harm per se. *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997). "This analysis does not change where the constitutional violation at issue is a Second Amendment violation because the right to peaceably bear arms to defend oneself is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees."" *Baird v. Bonta*, 81 F.4th 1036, 1046 (9th Cir. 2023). (quoting *McDonald v. City of Chi.*, 561 U.S. 742, 780 (2010). *See also Ezell v. City of Chi.,* 651 F.3d 684. 700 (7th Cir. 2011) (a deprivation of the right to arms is "irreparable and having no adequate remedy at law."). This Court has found Second Amendment violations constitute irreparable harm. *Fisher v. Kealoha,* 2012 U.S. Dist. LEXIS 90734, *40, 2012 WL.

## V.     <u>Granting the TRO/PI is in the Public Interest and Serves Equity</u>

The last two preliminary injunction elements merge when the government is the defendant. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citation omitted). When challenging government action that affects the exercise of constitutional rights, "[t]he public interest . . . tip[s] sharply in favor of enjoining the" law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). As the Ninth Circuit has made clear, "all citizens have a stake in upholding the Constitution" and have "concerns [that] are implicated when a constitutional right has been violated."

*Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). The State "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable . . . to allow the state . . . to violate the requirements of federal law." (citations omitted)). [W]e *presume* that a constitutional violation causes a preliminary injunction movant irreparable harm and that preventing a constitutional violation is in the public interest. *Baird v. Bonta*, 81 F.4th 1036, 1046 (9th Cir. 2023). On the other hand, granting an injunction will end the ongoing violation of Plaintiff's rights.

## VI.   <u>Waiver of Bond is Proper and Appropriate Under These Circumstances</u>

"Notwithstanding its seemingly mandatory language," stating that the movant must provide "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained," "Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Weaver v. City of Montebello*, 370 F.Supp.3d 1130, 1139 (C.D. Cal. 2109) (quoting *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009)). The court may properly dispense with any such bond requirement when "the balance of ... equities weighs overwhelmingly in favor of the party seeking the injunction," *East Bay Sanctuary Covenant v. Trump*, 349 F.Supp.3d 838, 869 (N.D.

Cal. 2018) (quoting *Elliott v. Kiesewetter*, 98 F.3d 47, 60 (3d Cir. 1996)), when "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct," *Johnson* at 1086 (internal quotations omitted), and where the plaintiffs have a "likelihood of success on the merits," *People of the State of Cal. ex rel. Van De Kamp v. Tahoe Regency Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985). All these factors are true here, as illustrated above, thus rendering a waiver both proper and appropriate.

### VII.    This Court Should Consolidate Pursuant to Rule 65(a)(2)

Rule 65(a)(2) of the Federal Rules of Civil Procedure state "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. This Court should do so here because "[g]iven the expedited and predominately legal nature of the questions presented by this litigation," the "evidence presented by the parties through the briefing and hearing on the motions for preliminary injunctions will be relevant to adjudicating the Plaintiffs' claims on the merits." *Donald J. Trump for President, Inc. v. Bullock*, No. CV 20-66-H-DLC, 2020 U.S. Dist. LEXIS 169794, at *2 (D. Mont. Sep. 16, 2020). Mr. Day is currently suffering irreparable harm and would thus benefit from a consolidated hearing.

## VIII.    <u>Conclusion</u>

The challenged provisions of the Manual are unconstitutional. *Bruen* commands that government officials cannot be given authority to use their subjective discretion to deny Second Amendment rights. It is also unconstitutional for the County to deny Second Amendment rights based on an encounter that did not lead to a judicial determination that a person is dangerous. The motion should be granted.

DATED:  Honolulu, Hawaii; December 6, 2023.

Respectfully submitted,

<u>/s/ Alan Beck</u>
Alan Alexander Beck
Counsel for Plaintiff
2692 Harcourt Drive
San Diego, CA 92123
(619) 905-9105
Hawaii Bar No. 9145
alan.alexander.beck@gmail.com

<u>/s/ Richard Holcomb</u>
Richard L. Holcomb
Holcomb Law, LLLC
733 Bishop St
Suite 1478
Honolulu, HI  96813
(808) 545-4040
Hawaii Bar No. 9177
rholcomblaw@gmail.com